IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**CHRISTOPHER SHANE HAMILTON,**

Petitioner,

v.                                            Civil Action No. **3:14CV636**

**DIRECTOR OF VDOC,**

Respondent.

## MEMORANDUM OPINION

Christopher Shane Hamilton, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 (hereinafter, "§ 2254 Petition," ECF No. 1). By Memorandum Opinion and Order entered May 11, 2015, the Court denied without prejudice Respondent's Motion to Dismiss and ordered Respondent to file a further response. Respondent has filed his renewed Motion to Dismiss (hereinafter, "Renewed Motion to Dismiss." ECF No. 18) and expanded the record by providing an affidavit of trial counsel. Despite Respondent having issued a *Roseboro* notice, Hamilton has not responded. For the reasons stated below, the Renewed Motion to Dismiss will be GRANTED.

### I.      PROCEDURAL HISTORY

On February 7, 2012, the Circuit Court for the City of Williamsburg and the County of James City ("Circuit Court") convicted Hamilton, pursuant to guilty pleas, of two counts of robbery, one count of felony eluding police, two counts of abduction, and four counts of use of a firearm, and sentenced Hamilton to an active term of twenty-two years in prison. *Commonwealth v. Hamilton*, Nos. 20479-00, 20481-00 through 20484-00, 20489-00, 20490-00,

20562-00, and 20566-00, at 1–3 (Va. Cir. Ct. Feb. 7, 2012).[1] Hamilton appealed. On December 3, 2012, the Supreme Court of Virginia refused Hamilton's petition for appeal. *Hamilton v. Commonwealth*, No. 121286, at 1 (Va. Dec. 3, 2012).

On November 4, 2013, Hamilton filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, raising the same claims as in the instant § 2254 Petition. Petition for Writ of Habeas Corpus at 1, *Hamilton v. Dir. of the Dep't of Corr.*, No. 131738 (Va. filed Nov. 4, 2013). On June 6, 2014, the Supreme Court of Virginia found that Hamilton's ineffective assistance claim was barred by the rule in *Anderson v. Warden*, 281 S.E.2d 886 (Va. 1981), because his allegations contradicted his representations at his guilty plea colloquy, and found that his challenge to his convictions under the incidental detention doctrine was procedurally barred by the rule in *Peyton v. King*, 169 S.E.2d 569, 571 (Va. 1969), because a "voluntary and intelligent guilty plea waives all non-jurisdictional defenses antecedent to a guilty plea." *Hamilton v. Dir. of the Dep't of Corr.*, No. 131738, 1-3 (Va. June 6, 2014).

Thereafter, Hamilton filed the present § 2254 Petition in which he raises the following claims for relief:[2]

| | |
|---|---|
| Claim One: | Counsel rendered ineffective assistance by failing to "perform pre-trial investigation" on the abduction and robbery charge and thereby "push[ed] a plea agreement on defendant" despite Hamilton's "reluctance to take a plea." (§ 2254 Pet. Attach. 2-3, ECF No. 1-1.) |
| Claim Two: | Hamilton's abduction convictions were invalid because they were incidental to his robbery convictions. (*Id.* at 4-6.) |

---

[1] Pursuant to the plea agreement, the Commonwealth agreed to dismiss six additional charges. Plea Agreement at 3, *Commonwealth v. Hamilton*, Nos. 20491-00 through 20493-00, 20563-00 through 20565-00 (Va. Cir. Ct. entered Sept. 7, 2011).

[2] The Court employs the pagination assigned by the CM/ECF docketing system for Hamilton's § 2254 Petition and Attachment.

2

While not eloquently articulated, the Court discerned that the heart of Hamilton's petition argued that counsel rendered ineffective assistance by failing to properly advise Hamilton about the incidental detention doctrine, *see Jones v. Sussex I State Prison*, 591 F.3d 707, 710 (4th Cir. 2010), prior to the entry of his guilty plea, thus, making his plea invalid. Because Respondent failed to demonstrate that the procedural bars should be enforced in the instant case and failed to address Hamilton's argument that he entered into his guilty plea based on the defective advice of counsel thereby rendering his plea unknowing and involuntary, the Court denied the Motion to Dismiss and ordered further briefing. *See Hamilton v. Dir. of VDOC*, No. 3:14CV636, 2015 WL 2206547, at *1-2 (E.D. Va. May 11, 2015).

## II. THE APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

In Claim Two, Hamilton argues that his abduction convictions were invalid because they were incidental to his robbery convictions. (§ 2254 Pet. Attach. 4-6.) Respondent argues that Hamilton's claim challenging his convictions under the incidental detention doctrine is procedurally barred because the Supreme Court of Virginia applied the rule in *Peyton v. King*, 169 S.E.2d 569, 571 (Va. 1969), and refused to consider his claim on habeas review because a "voluntary and intelligent guilty plea waives all non-jurisdictional defenses antecedent to a guilty plea." (Br. Supp. Ren. Mot. Dismiss 17.) As explained below, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Supreme Court of Virginia's rejection of this claim. *See* 28 U.S.C. § 2254(d)(1)–(2).

"'[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges.'" *United States v. Martinez*, 424 F. App'x 208, 208 (4th Cir. 2011) (alterations in original) (quoting *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993)); *Peyton*, 169 S.E.2d at 571. By pleading guilty, Hamilton waived his right to contest the sufficiency of the evidence underlying his conviction for abduction. *Id.* Thus, the Supreme Court of Virginia reasonably found that Claim Two was barred from review.

Hamilton, however, suggests that his guilty plea was not knowingly and voluntarily made due to counsel's failure to explain the incidental detention doctrine to him. For the reasons set forth below, Hamilton fails to demonstrate any deficiency of counsel or resulting prejudice from counsel's purported inaccurate or incomplete advice.

4

### III. PURPORTED INEFFECTIVE ASSISTANCE OF COUNSEL

#### A. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Any assertion by Hamilton that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a

petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

As explained below, Hamilton fails to demonstrate any deficiency of counsel or resulting prejudice in light of the uncontroverted evidence of his guilt and the significant benefits he received from entering his guilty plea. Hamilton cannot show that a reasonable defendant in his position would have insisted on proceeding to trial, but for counsel's alleged failure to investigate and explain to Hamilton the incidental detention doctrine.

### B. Guilty Plea Proceedings and Factual Basis for Plea

At this point, because Hamilton's claim of ineffective assistance of counsel stems from counsel's performance prior to and during the plea proceedings, the Court provides a summary of the plea hearing. During the hearing, Hamilton swore under oath that he fully understood the charges against him, that he had discussed the charges with counsel, and that he understood what the Commonwealth needed to prove to find him guilty. (Sept. 7, 2011 Tr. 11.) Hamilton agreed that he had sufficient time to discuss any possible defenses with his lawyer and whether or not to plead guilty, and he decided for himself to plead guilty. (Sept. 7, 2011 Tr. 11-12.) Hamilton agreed that he entered into the guilty plea freely and voluntarily and because he was in fact guilty of the crimes charged. (Sept. 7, 2011 Tr. 12.) Hamilton also agreed that he understood that by

6

pleading guilty he waived the right to confront and cross-examine his accusers and defend himself. (Sept. 7, 2011 Tr. 12.) Hamilton also agreed that he was "entirely satisfied" with the services of his counsel and that there was nothing Hamilton "asked him to do in preparation for this trial that he failed or refused to do." (Sept. 7, 2011 Tr. 13.) Hamilton agreed that he understood that he could receive up to "four life sentences . . . and 23 years." (Sept. 7, 2011 Tr. 14.) The Circuit Court found the pleas freely, intelligently, and voluntarily made, and accepted the pleas. (Sept. 7, 2011 Tr. 16.) The Circuit Court also explained that in exchange for Hamilton's guilty pleas, the Commonwealth had agreed to *nolle prosequi* three abduction charges and three related firearm charges. (Sept. 7, 2011 Tr. 16-17.) As a factual basis for the pleas, the Commonwealth explained:

> These involved two separate offenses, so I'll go in chronological order. The first [robbery, abduction, and two firearm] offenses[s] occurred at the Rite Aid in James City County on the 18th of April.
> . . . .
> . . . The pharmacist, Jeff Lane, indicated that he came into the pharmacy at 9:00. He opened the door to the pharmacy, clocked in, turned his computer on, opened the gate and was washing his hands when a man came around the corner in the pharmacy. He pushed me up against the sink. I thought he was someone joking. I turned and his gun was against my forehead. He pushed me up against the refrigerator and said I want your narcotics. I was walking to the narcotics cabinet, and he said, Don't screw with me [motherf*cker]. I said, I'm not. The cabinet is over here. He pushed me up against the shelf and hit me with the gun. That was in the back of his head and the base of the neck. I said, My leg is broken. I can't move any faster. He hit me again on the back of my head. I opened the cabinet, and he said, Give me your narcotics. I said, I'll give you everything. Just tell me what you want. He hit me again. You know what I want [motherf*cker]. I just grabbed the first drawer of Adderall and started stuffing his bag. He pushed me away and left. I told him I was not looking. I put my head down. As he was leaving, I saw his coat. Obviously, they called the police right away and reported that. The offender later, who was determined to be Mr. Hamilton by his admission, wasn't located at that point.
> Then, on the 26th of April of this year - - and this is one of the witnesses at Olde Towne Pharmacy. She indicated that they were working at Old Towne Pharmacy. They were working behind the counter. Heard a man say don't move and turned around to see a black male with a gun grab the pharmacist by the arm and demand all the Oxycontin and Percocet, et cetera. Told three of the female

7

> staff members there to get in the corner. Herded them over to the corner where they stood still. He saw one woman counting money. He asked for the money, and she gave it to him. The pharmacist put the drugs in a plastic bag he had brought with him. He took the bag and told them not to move and he left. She pushed the alarm and called 911.
>
> When the police got the 911 call, they got a description, and a vehicle description was given also. They located a vehicle fitting that description eastbound on Richmond Road at the light of the Richmond airport. Once the officers left Olde Towne and tried to catch up to the vehicle, they caught up to the vehicle near Richmond Road. They vehicle made a left turn at the crossover and started to head westbound on Richmond Road. The officers pulled through the cut through prior to the one that he had pulled into and waited for him to go by. He came to the cut through and was stopped and ordered to get out. He took off eastbound on Richmond Road and made a U-turn and began the pursuit. Heading eastbound on Richmond Road the vehicle was driving recklessly by cutting off cars, going around cars and accelerating at higher and higher speeds and not stopping for the officer's emergency equipment. Lieutenant Barnett threw out spikes ahead. The subject swerved around them and continued east on Richmond Road, made a right turn onto Ironbound Road or a left onto Ironbound Road near the Longhill connector but going into a right-hand only turn lane for Ironbound west traffic. The vehicle kept eastbound on Ironbound Road. There was a construction area where workers were present, and he went onto the right shoulder kicking up dust and driving around the eastbound lane of traffic that was stopped. Once off the shoulder, the vehicle turned into New Town going into the Oxford or New Town section. That was one way in. There was no way out. The officer followed in, and another officer went in the opposite direction. The suspect's vehicle met the other officer head on and stopped at that point, and he jumped out of the car with his hands up and obeyed their commands at that point, and he indicated to the officer thanks for catching me. He indicated that he had taken a bottle of the pills he took from the pharmacy and wanted medical treatment, and the medics were called at that point in time. He later admitted to the offense on both dates, Judge, and all of those events occurred in James City County. The pharmacist at the Rite-Aid was Jeff Lane. The pharmacist that actually handed him the pills was Kelly Hasty, and the other abductions dealt with the other three women that were herded into the corner of the pharmacy.

(Sept. 7, 2011 Tr. 17-21.) After the conclusion of the proffered evidence, counsel for Hamilton agreed and stipulated that the evidence as presented was a fair summary and sufficient to find his client guilty. (Sept. 7, 2011 Tr. 21.) The Circuit Court found Hamilton guilty of two counts of abduction, two counts of robbery, four counts of firearm offenses, and one count of evading and eluding a police officer. (Sept. 7, 2011 Tr. 21-22.)

### C. Hamilton's Allegations in Claim One

In Claim One, Hamilton contends that counsel failed to "perform a pre-trial investigation," failed to advise him, prior to the entry of his guilty pleas, of information that may have undermined the robbery and abduction charges, and "push[ed] the plea agreement on [him]." (§ 2254 Pet. Attach. 2.) In support of his claim, Hamilton contends that counsel received a "document of information a full month" before he pled guilty "questioning the validity of the ... charges of robbery and abduction and made no effort to relay this information to the defendant or make a necessary motion to strike ...." (*Id.* at 2.) Hamilton attaches to his § 2254 Petition as Exhibit A, an email to his attorney, Dwight Dansby, with a quote from a Virginia case pertaining to robbery and abduction. (§ 2254 Pet. Ex. A, at 1.) The Court assumes that this email is the document that Hamilton believes counsel should have shown him prior to the entry of his guilty pleas. Hamilton argues that: "the alleged abductions [were] merely incidental to the crime of robbery" and "defendant did nothing more than what was necessary to commit the crime of robbery." (§ 2254 Pet. Attach. 4.) Hamilton suggests that counsel rendered ineffective assistance by failing to properly advise Hamilton about the incidental detention doctrine prior to the entry of his guilty pleas, making his pleas invalid. As discussed below, Hamilton's claim lacks merit because he fails to demonstrate any deficiency of counsel or prejudice from counsel's purported failure to fully explain the incidental detention doctrine and his purportedly erroneous advice to plead guilty.

### D. Hamilton Fails to Demonstrate Deficiency or Prejudice

#### 1. Hamilton Demonstrates No Deficiency of Counsel

In response to Hamilton's allegations, counsel avers

> I did conduct [a] pretrial investigation. I provided Mr. Hamilton copies of the criminal statutes for each charge against him, discussed the elements of the

9

> charges with him and the expected evidence against him to support the charges. I reviewed the law and cases regarding incidental detention during robbery, and discussed this [with] Mr. Hamilton.
>
> Mr. Hamilton attached a copy of a memo to his petition regarding the incidental detention doctrine. This memo is a summary of the doctrine which I asked my law clerk, Mr. Fehrenbach, to type for me. The summary is based upon review of several cases. A few of the cases are cited in the *Hoyt v. Commonwealth* (605 S.E.2d 755, 44 Va. App. 489, 2004), which Mr. Hamilton cites in his Analysis of the Validity of Abduction claim. Incidentally, this case was successfully argued by Charles E. Haden for the Appellant. The Court of Appeals ruled that the abduction was incidental to the robbery. Attorney Haden is one of the criminal defense attorneys I consulted about the facts of Mr. Hamilton's situation.
>
> . . . .
>
> Mr. Hamilton believes that he only did what was necessary to complete the robberies of two pharmacies. My concern for him was that the judge or jury would not consider actions merely incidental to the robbery would include pistol whipping, pushing, grabbing, pointing a semi automatic 40 caliber Glock handgun in the face, cocking the gun, and other factors [sic]. The store employees were expected to testify that they were terrified and feared for their lives because of his actions and Mr. Hamilton told them that he was a junkie, hurting, needed drugs, and "don't screw with me, mother [f*cker]."

(Br. Supp. Ren. Mot. Dismiss Ex. B (hereinafter, "Dansby Aff."), at 1 (emphasis added), ECF No. 20-2.) Thus, contrary to Hamilton's assertions, counsel swears that he conducted a pre-trial investigation into the relevant law for the incidental detention doctrine and shared this information with Hamilton prior to his decision to plead guilty. Hamilton simply clings to a mistaken belief that he could not be guilty of both abduction and robbery, despite receiving counsel's reasoned advice that the evidence was sufficient to find him guilty of both crimes. Hamilton fails to demonstrate any deficiency of counsel. As explained below, *see infra* Part III.D.2, Hamilton's actions were sufficient to warrant a finding of guilt on both the robbery and abduction charges.

Next, Hamilton contends that counsel "was very adamant about pushing the plea agreement on the defendant in a verbally threatening manner. [Hamilton] stated his reluctance to take the plea[s] which had included five abductions and seven gun charges, but the defendant[']s

10

counsel would retort with a threat of more time." (§ 2254 Pet. Attach. 2.) Hamilton contends that counsel told him "if he denied the offered plea bargain he would be convicted of all charges and be sentenced to a mandatory minimum of thirty-three years in prison" and thus, Hamilton "was then persuaded to submit to the plea bargain being offered to avoid a stricter punishment . . . ." (*Id.*) The Court fails to discern, and Hamilton fails to allege, any deficiency or resulting prejudice from counsel's actions. Hamilton admits that despite his "reluctance" to accept the plea offer, it was he, not counsel, who decided that he should plead guilty to limit his potential sentencing exposure. For this reason alone, Hamilton's claim can be dismissed.

Moreover, the Court fails to discern any deficient advice provided by counsel. Counsel explains that "Mr. Hamilton's goal was to be sentenced to the least amount of active incarceration time to serve, regardless of the number or type of charges." (Dansby Aff. 1.) Counsel averred that he did not think that a judge or a jury would believe that Hamilton's violent actions were "merely incidental to the robbery." (*Id.* at 2.) He swears:

> I did not pressure Mr. Hamilton to accept the plea agreement, which would result in a sentence of eighteen years for the firearm charges and probably additional time for the other charges. The sentencing guidelines were eighteen years. The judge sentenced Mr. Hamilton to serve the mandatory eighteen years for the firearm convictions plus four years for the five other convictions. Mr. Hamilton thought that the proposed agreement was too harsh with the sentencing guidelines showing at least eighteen years to serve. I agreed that it is harsh, but a judge trial could easily have resulted in a harsher sentence, even if some of the charges would be dismissed. A jury would likely have been harsher than the judge. The victims would have been formidable witnesses against Mr. Hamilton.

(Dansby Aff. 2.) Counsel reasonably advised Hamilton that he would face a higher sentence if he proceeded to trial. Hamilton demonstrates no deficiency of counsel with regard to his advice about pleading guilty.

## 2. Hamilton Demonstrates No Prejudice

Additionally, Hamilton fails to show any prejudice from counsel's actions. Hamilton fails to demonstrate that a reasonable defendant in his position, but for counsel's purportedly deficient advice, would not have pleaded guilty and would have insisted on proceeding to trial. *Hill*, 474 U.S. at 59. First, through securing a plea agreement for Hamilton, counsel successfully reduced Hamilton's sentencing exposure. In exchange for his guilty pleas, the Commonwealth agreed to *nolle prosequi* three abduction charges and three additional firearm charges. Hamilton overlooks the fact that he almost certainly would have been convicted of each of those six additional counts based on the overwhelming evidence of his guilt. The three additional abduction charges each carried a penalty of up to life imprisonment and the three additional firearms charges would have subjected him to an additional mandatory minimum sentence of fifteen years to run consecutive to any other sentence. *See* Va. Code Ann. § 18.2-53.1 (West 2015). Without the benefit of the plea agreement, Hamilton would have nearly doubled his sentence based on the three additional firearm counts alone. While the judge sentenced him to four life sentences, and suspended all but four years on the robbery convictions, counsel reasonably anticipated that the Circuit Court would not be as generous after hearing the compelling evidence against Hamilton from all the witnesses. Thus, through his guilty plea, Hamilton secured a much lower sentence than he faced if he had gone to trial. In light of this much greater sentencing exposure, no reasonable defendant would have rejected the guilty pleas and insisted on going to trial.

Finally, Hamilton also fails to demonstrate any prejudice from counsel's purported failure to explain adequately the incidental detention doctrine. Overwhelming evidence existed that Hamilton was guilty of both robbery and abduction despite his protestations to the contrary, thus

a reasonable defendant in Hamilton's position would not have insisted on going to trial. To convict Hamilton of abduction, the Commonwealth needed to prove that Hamilton "by force, intimidation or deception, and without legal justification or excuse, seize[d], [took], transport[ed], detain[ed] or secrete[d] another person with the intent to deprive such other person of his personal liberty . . . ." Va. Code Ann. § 18.2-47(A) (West 2015). Under Virginia law

> one accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct, is subject upon conviction to separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime.

*Brown v. Commonwealth*, 337 S.E.2d 711, 713-14 (Va. 1985). "This rule has since come to be known as the 'incidental detention doctrine.'" *Jones v. Sussex I State Prison*, 591 F.3d 707, 710 (4th Cir. 2010) (citation omitted). "The only issue when abduction is charged alongside an offense for which detention is an intrinsic element is whether any detention exceeded the *minimum necessary* to complete the required elements of the offense." *Lawlor v. Commonwealth*, 738 S.E.2d 847, 869 (Va. 2013) (emphasis added). Virginia courts have repeatedly held that forcing or ordering a victim to move from one location to another constitutes abduction under Virginia law. *See, e.g., Powell v. Commonwealth*, 552 S.E.2d 344, 360-61 (Va. 2001) (finding defendant guilty of abduction when he ordered victim to move to a more secluded part of her home prior to the rape); *Freeman v. Commonwealth*, No. 0818-13-2, 2014 WL 1707155, at *3 (Va. Ct. App. Apr. 29, 2014) (finding defendant guilty of abduction when "he went beyond the minimum detention necessary to . . . rob them" by detaining victims "against their will (and thus abduct[ing] them) when he entered their offices and ordered them at gunpoint to follow him to the reception area").

13

Hamilton's actions were more than sufficient to support both the robbery and abduction convictions. Hamilton's actions during both robberies were "separate and apart from, and not merely incidental to, the restraint employed in the commission" of the robberies. *Brown*, 337 S.E.2d at 714. During the robbery of Rite Aid, Hamilton forced the pharmacist who had a broken leg, at gun point, to move across the pharmacy, pushed him, and struck him twice with the handgun. (Sept, 7, 2011 Tr. 17-18.) During the robbery of the Olde Towne Pharmacy, Hamilton "herded" three employees into the corner and ordered them at gun point to remain there. (Sept. 7, 2011 Tr. 19.) Hamilton employed more than the minimum detention necessary to rob the victims. Based on Hamilton's conduct, ample evidence existed that he abducted the victims. Thus, Hamilton would have been convicted of the additional abduction offenses if he had not pled guilty.

In light of the uncontroverted evidence of his guilt of robbery and abduction, and the significant benefits he received from entering his guilty pleas, Hamilton cannot show that a reasonable defendant in his position would have insisted on proceeding to trial but for counsel's failure to explain the incidental detention doctrine. Accordingly, Hamilton fails to demonstrate prejudice from counsel's actions. Claim One will be DISMISSED.

Moreover, because Hamilton fails to demonstrate any deficiency or resulting prejudice from counsel's purported inaccurate or incomplete advice about the incidental detention doctrine, Hamilton also cannot show that counsel's error rendered his guilty plea not knowingly and voluntarily made. Accordingly, Claim Two will be also DISMISSED.

## IV. CONCLUSION

The Renewed Motion to Dismiss (ECF No. 18) will be GRANTED. Hamilton's claims will be DISMISSED, and the § 2254 Petition will be DENIED. The action will be DISMISSED. The Court will DENY a certificate of appealabilty.[3]

An appropriate Final Order shall issue.

It is so ORDERED.

/s/ _____
Roderick C. Young
United States Magistrate Judge

Date: December 23, 2015
Richmond, Virginia

---

[3] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Hamilton fails to meet this standard. Accordingly, a certificate of appealability will be DENIED.